**TEAMSTERS LOCAL 617 PENSION AND WELFARE FUNDS, et al.,**
Plaintiffs,

v.

**APOLLO GROUP, INC.,**
**et al., Defendants.**

**No. CIV 06–02674 PHX RCB.**

United States District Court,
D. Arizona.

March 30, 2012.

Christopher M. Wood, Jeffrey W. Lawrence, Dennis J. Herman, San Francisco, CA, Jay P. Saltzman, Schoengold Sporn Laitman & Lometti PC, Fei–Lu Qian, Marc I. Gross, New York, NY, Michael Salcido, Molever Conelly PLLC, Scottsdale, AZ, Patrick V. Dahlstrom, Chicago, IL, Robert O. Dyer, Polsinelli Shughart PC, James W. Barnhouse, Buckley King LPA, Robert D. Mitchell, Mitchell & Associates PC, Joshua Ray Forest, Mitchell & Forest, Susan Joan Martin, Martin & Bonnett PLLC, Phoenix, AZ, Lauren S. Antonino, Motley Rice LLC, Atlanta, GA, David A. Rosenfeld, Weinberg Roger & Rosenfeld PC, Alameda, CA, Samuel H. Rudman, Melville, NY, for Plaintiffs.

Brian A. Herman, New York, NY, Joseph E. Floren, San Francisco, CA, Michael J. Farrell, Jennings Strouss & Salmon PLC, Phoenix, AZ, Steven Charles Lawrence, Clark Hill PLC, Scottsdale, AZ, Peter B. Morrison, Virginia F. Milstead, Eric S. Waxman, Los Angeles, CA, for Defendants.

### ORDER

ROBERT C. BROOMFIELD, Senior District Judge.

#### *Background*

In this securities fraud action, lead plaintiff, Pension Trust Fund for Operating Engineers ("plaintiff"), commenced this action against Apollo Group, Inc. ("Apollo"), and various Apollo officers and directors ("the individuals").[1] In an effort to satisfy the rigorous pleading standards of the Private Securities Litigation and Reform Act ("PSLRA") and Fed.R.Civ.P. 9(b), plaintiff

has made literally hundreds of pages of allegations in two separate complaints.[2] After scrutinizing plaintiff's "cut and paste, ... puzzle like pleading" in *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763 (D.Ariz.2009) ("*Apollo I*"), *vacated in part on reconsideration*, 690 F.Supp.2d 959 (D.Ariz.2010), this court found, *inter alia*, that the first amended complaint ("FAC") did not "satisfy the heightened pleading standards for fraud under either Rule 9(b) or the PSLRA." *Id.* at 786. The court allowed plaintiff to amend the FAC and it did.

That second amended complaint ("SAC") was the subject of another round of dismissal motions by defendants. Finding that the SAC did not plead falsity with the requisite degree of particularity, the court dismissed the SAC "with prejudice and without leave to amend." *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 2011 WL 1253250, at *37 (D.Ariz. March 31, 2011) ("*Apollo III*"). Accordingly judgment was entered in favor of defendants and against plaintiff.

Currently pending is "Lead Plaintiff's Fed. R.Civ.P. 59(e) Motion to Alter or Amend Judgment[.]" (Doc. 146) at 1. Plaintiff is seeking to have the court reopen and modify the *Apollo III* judgment on the following grounds: (1) two Ninth Circuit cases decided subsequent to *Apollo III* purportedly represent an intervening change in controlling law; (2) dismissal of certain false and misleading statements was "manifestly erroneous;" and (3) it was "clear error to dismiss the SAC with prejudice and without leave to amend." Defendants respond that plaintiff has not satisfied the exceedingly stringent standards to warrant the "extraordinary remedy" of amending a judgment after its entry. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.2011) (citation and internal quotation marks omitted).

---

1. Apollo "adopts and incorporates the individual's arguments "to the extent applicable to Apollo[.]" Apollo Resp. (Doc. 149) at 6:25–26, n. 1. Similarly, the individuals are relying upon Apollo's reasons, as well as their own, in arguing that plaintiff's motion should be denied. *See* Defs.' Resp. (Doc. 148) at 22:19–20. Thus, unless necessary to distinguish among them, Apollo and the

individuals will be collectively referred to throughout as "the defendants."

2. That estimation takes into account the voluminous exhibits incorporated in each of the complaints.

### Discussion[3]

#### I.   Fed.R.Civ.P. 59(e)

##### A.   Timeliness

Plaintiff specifically styles its motion as one to "alter or amend judgment" pursuant to Fed.R.Civ.P. 59(e). *See* Pl.'s Mot. (Doc. 146) at 1.[4] That Rule mandates that such motions "must be filed no later than 28 days after *entry* of the *judgment* [.]" Fed. R.Civ.P. 59(e) (emphasis added). Calculating the relevant time frame in accordance with Fed.R.Civ.P. 6(a), the court "exclude[s]" April 1, 2011, the entry date of the judgment, as that is "the day of the event that triggers" Rule 59(e)'s 28 day time "period[.]" *See* Fed.R.Civ.P. 6(a)(1)(A). Then, "count[ing] every day, including intermediate Saturdays, Sundays, and legal holidays[,]" means that plaintiff had until April 29, 2011, in which to file its Rule 59(e) motion. *See* Fed.R.Civ.P. 6(a)(1)(B). Plaintiff's motion was filed on April 28, 2011, 27 days after the entry of the judgment. Undoubtedly, that motion was timely under Rule 59(e).

Nonetheless, defendants urge the striking of plaintiff's motion as "untimely[.]" Apollo Resp. (Doc. 149), at 8 n. 5. Defendants posit that because this Court "treats" Rule 59(e) motions "as motions for reconsideration[,]"[5] *id.*, and because plaintiff is seeking to have this court "reconsider its judgment[,]" Pl.'s Mot. (Doc. 146) at 6:7, LRCiv 7.2(g)(2) provides the relevant time frame, not Rule 59(e). In accordance with that former Rule, "[a]bsent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the *date* of the *filing* of the *Order* that is the subject of the motion." LRCiv 7.2(g)(2) (emphasis added). Defen-

dants proceed to argue that because plaintiff's motion "was filed *28 days* after the *entry* of the *Order* (Dkt. No. 145)[,]" it was not timely under that Local Rule. *See* Apollo Resp. (Doc. 149) at 8, n. 5 (emphasis added).

There are two primary flaws with this statement. For starters, it is ambiguous because although Apollo specifically refers to "the Order[,]" it cites to the judgment. Apollo Resp. (Doc. 149) at 8 n.5. An order and a judgment are not necessarily synonymous. Second, the just quoted statement is internally inconsistent given defendants' proverbial comparison of apples to oranges. The defendants indicate that "*entry* of the Order" is the relevant event under LRCiv 7.2(g)(2), *see id.* (emphasis added), however, pursuant to that Local Rule it is the "*filing* of the Order[,]" not its "entry" which is the triggering event. *See* LRCiv 7.2(g)(2) (emphasis added). On the other hand, "entry of the *judgment,* as opposed to the order, is the triggering event under Fed.R.Civ.P. 59(e), which plaintiff argues applies here.

Taking defendants' statement at face value, *i.e.,* looking to the date of entry of the Order, they also inaccurately calculate the time frame. As with the judgment, the order was filed on March 31, 2011, but it was not entered until April 1, 2011. *See* Doc. 144. Thus, as discussed above with respect to the entry of the judgment, plaintiff's motion was filed *27,* not "*28* days after . . . entry of the Order[,]" as defendants assert. *See* Apollo Resp. (Doc. 149) at 8, n. 5 (citation omitted) (emphasis added).

With this clarification, the issue remains whether LRCiv 7.2(g) (2), as defendants urge, or Fed.R.Civ.P.Rule 59(e), as

---

3.   Given the court's intimate familiarity with this action and because the issues have been fully briefed, in its discretion the court denies plaintiff's request for oral argument as it would not aid the decisional process. *See* Fed.R.Civ.P. 78; *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir.1991).

4.   For ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system.

5.   In so doing, this court is following well-settled Ninth Circuit precedent denominating Rule 59(e) motions to alter or amend a judgment as motions to reconsider. *See, e.g., S.E.C. v. Platforms Wireless Int'l Corp.,* 617 F.3d 1072, 1100 (9th Cir. 2010) (citing *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir. 2009)) (enumerating the circumstances under which "[r]econsideration under Rule 59(e) is appropriate[ ]"); *Kona Enterprises Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000) (recognizing that "Rule 59(e) permits a district court to reconsider and amend a previous order[ ]").

plaintiff assumes, governs the timeliness of the pending motion. Defendants are mistaken that "constru[ing] plaintiff's Rule 59(e) motion as one for reconsideration means that it "should be stricken" as untimely based upon LRCiv 7.2(g)'s 14 day filing deadline. *See id.* That Local Rule does not apply in this situation because that Rule expressly pertains only to motions to reconsider "orders," as opposed to judgments. *See* LRCiv 7.2(g). Federal Rule 59(e), on the other hand, and the explicit basis for plaintiff's motion herein "clearly contemplates entry of judgment as a predicate to any motion[ ]" thereunder. *See Balla v. Idaho State Board of Corrections,* 869 F.2d 461, 466 (9th Cir. 1989) (internal quotation marks and citations omitted). And here, a judgment within the meaning of Rule 54, was separately entered in accordance with Fed.R.Civ.P. 58. Thus, in keeping with its "obligation to construe local rules so that they do not conflict with the federal rules," *Marshall v. Gates,* 44 F.3d 722, 725 (9th Cir.1995) (citation omitted); Fed.R.Civ.P. 83(a)(1), the court readily finds that LRCiv 7.2(g), directed to reconsideration of orders, does not foreclose a Fed. R.Civ.P. 59(e) motion such as this to alter or amend a judgment. *See Gaut v. Carter,* 2012 WL 94479, at *2 (E.D.Cal.2012) (emphasis added) (local rule governing reconsideration of rulings, decisions or orders did not foreclose Rule 59(e) motion "based on the Court's error in entering judgment on the ... claim[ ]"). Further because, as discussed above, Rule 59(e) has its own 28 day time frame, despite defendants' contrary suggestion, deeming a Rule 59(e) motion to be one for reconsideration does not mean that LRCiv 7.2(g)(2)'s shorter filing time frame applies.

### B. Governing Legal Standards

█ Rule 59(e) does not list "specific grounds for a motion to amend or alter[;]" hence, "the district court enjoys considerable discretion in granting or denying the motion." *Herron,* 634 F.3d at 1111 (internal quotation marks and citation omitted). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which

the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id.* (citation omitted). "[O]ther, highly unusual circumstances," also may "warrant[ ] reconsideration." *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993).

█ At the same time, however, "[a] motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009) (case citation and internal quotation marks omitted) (emphasis in original). Therefore, a party "rais[ing] arguments or present[ing] evidence for the first time when they could reasonably have been raised earlier in the litigation[ ] ... raise[s] the concern that [it] has abused Rule 59(e)[.]" *Herron,* 634 F.3d at 1112 (citation and internal quotation marks omitted). "Ultimately, a party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Cachil Dehe Band of Wintun Indians v. California,* 649 F.Supp.2d 1063, 1070 (E.D.Cal.2009) (citation and internal quotation marks omitted).

█ As is abundantly clear, "amending a judgment after its entry remains an extraordinary remedy[.]" *Herron,* 634 F.3d at 1111 (internal quotation marks and citation omitted). The Ninth Circuit thus has repeatedly cautioned that such an amendment "should be used sparingly." *Id.* (internal quotation marks and citation omitted). Amendment of judgment is sparingly used to serve the dual "interests of finality and conservation of judicial resources." *See Kona Enterprises,* 229 F.3d at 890. It stands to reason then that plaintiff, as the moving party here, has a "high hurdle." *See Weeks v. Bayer,* 246 F.3d 1231, 1236 (9th Cir.2001). Moreover, denial

of a motion for reconsideration under Rule 59(e) will not be reversed absent a showing of abuse of discretion. *See Herron,* 634 F.3d at 1111.

### 1. "Intervening Change in Controlling Law"

Here, the first basis for plaintiff's Rule 59(e) motion is a claimed intervening change in controlling law. Shortly after entry of judgment in this case, the Ninth Circuit issued *Lynch v. Rawls,* 429 Fed.Appx. 641 (9th Cir.2011) ("*Finisar III*"); and *New Mexico State Invest. Council v. Ernst & Young LLP,* 641 F.3d 1089 (9th Cir.2011) ("*Ernst*"). Plaintiff strongly implies that each of those decisions constitutes "an intervening change in controlling law[,]" thus entitling it to relief under Fed.R.Civ.P. 59(e). *See* Pl.'s Mot. (Doc. 146) at 5:28–6:1 (internal quotation marks, citation and footnote omitted). Defendants disagree.

There is a dearth of case law, especially in the context of securities litigation, defining precisely what constitutes "an intervening change in controlling law"[6] for Rule 59(e) purposes. *See In re Intelligroup Sec. Litig.,* 527 F.Supp.2d 262 (D.N.J.2007) ("few federal courts [have] addressed plaintiffs' Rule 59(e) motions within the context of securities litigation for the purpose of establishing whether the precedent entered during the pendency of the case constituted an intervening change in the controlling law[ ]"). Perhaps that explains, but it does not excuse, the relative short shrift which the parties gave this issue.

Neither the plaintiff nor Apollo discussed this issue at all. The individuals did, but their treatment was cursory and uninstructive. They claim that:

> [I]n contexts analogous to Rule 59(e), courts have held that a[ ] ... change in controlling law only occurs where 'the reasoning or theory of ... prior authority is clearly irreconcilable with the reasoning or theory of intervening higher authority.'

Defs.' Resp. (Doc. 148) at 8:8–10 (quoting *Miller v. Gammie,* 335 F.3d 889, 893 (9th Cir.2003) (en banc)).

The individuals' reliance on *Miller,* where the Ninth Circuit was "examin[ing]" the effect of an intervening Supreme Court decision on a three-judge panel of th[at] [Circuit] Court[,]" is misplaced. *See United States v. Lindsey,* 634 F.3d 541, 548 (9th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 2475, 179 L.Ed.2d 1232 (2011). First, even accepting the premise that *Miller* is analogous to the present case, *Miller*'s holding is not as broad as the individuals imply. The *Miller* Court carefully limited its holding to "*circumstances like those presented* [*t*]*here* [*in*][*.*]" *See Miller,* 335 F.3d at 893 (emphasis added). In particular, its holding governs "circumstances ..., where the reasoning or theory of [a] prior circuit authority is *clearly irreconcilable* with the reasoning or theory of intervening higher authority[.]" *Id.* (emphasis added). The *Miller* court reiterated that "[i]n future cases of such clear irreconcilability, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled." *Id.* at 900. The individuals' selective quote fails to take into account the context of *Miller.*

Second, as discussed next, changes in controlling law for Rule 59(e) purposes can occur short of cases of clear irreconcilability, such as *Miller.* Third, nothing in *Miller,* or, as will be seen, elsewhere, indicates, as the individuals declare, that a change in controlling law "*only* occurs" under the scenario in *Miller.* *See* Defs.' Resp. (Doc. 148) at 8:9 (emphasis added). In sum, the court disagrees with the individuals that *Miller* provides the governing legal standard here. Consequently, before examining whether *Finisar III* or *Ernst,* or both, resulted in a change in controlling law as Rule 59(e) conceives it, the court is compelled to look for guidance to the

---

**6.** Judgment was entered in this case on April 1, 2011 (Doc. 145). The Ninth Circuit filed *Ernst,* 641 F.3d 1089, on April 14, 2011, and *Finisar III,* 429 Fed.Appx. 641, on April 26, 2011. Consequently, there is no dispute that both decisions were "intervening." Here, the only contested issue is whether either or both of those decisions resulted in a change in controlling law. Hence, for brevity's sake, hereinafter, the court will omit "intervening."

analyses of other courts which have confronted that issue. From that, two basic principles emerge.

■ The first is that confirmation or clarification of existing law is not tantamount to a change in controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir.2003), another securities fraud action, is illustrative. Affirming the denial of plaintiffs' Rule 59(e) motion, the *Schiller* Court rejected their argument that "*Nathenson v. Zonagen, Inc.*, 267 F.3d 400 (5th Cir.2001) represent[ed] a[ ] ... change in the law[ ] ... with respect to the pleading requirements in securities fraud cases." *Id.* at 568 n. 3. From the standpoint of the *Schiller* Court, "*Nathenson* held that the enactment of the [PSLRA] did **not generally alter** the substantive scienter pleading requirements for § 10(b) and Rule 10(b)(5) securities fraud claims." *Id.* (bold emphasis added). Rather, "*Nathenson* **merely confirmed** that scienter or severe recklessness remained a valid basis for liability under § 10(b) and Rule 10(b)(5) in light of the plain language of the PSLRA." *Id.* (bold emphasis added). As *Schiller* demonstrates, a change in controlling law requires more than "merely confirm[ing]" the state of existing law. *See id.; see also United States v. Campbell*, 168 F.3d 263, 269–270 (6th Cir.1999) (emphasis added) (defendant not entitled to re-open sentence based upon amendment to Sentencing Guideline which "*merely clarified or explained* it[ ]" but "did not substantively alter the guideline" and did not "change ... any underlying principles[ ]" because that clarification "constitute[d] no 'change' in the law at all[ ]"); *In re Intelligroup*, 527 F.Supp.2d at 381–382 (footnote and citations omitted) (applying the *Schiller* rationale, and holding that neither *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), nor *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), "provide[d] th[e] Court with grounds to grant Plaintiffs ... leave to amend, since both ... decisions clarified-rather than altered-the applicable pleading standards,

which existed at the time of Plaintiffs' filing of all [their] complaints[ ]").

■ To the contrary, the second emerging principle is that a change in controlling law results where a subsequent decision "creates a *significant shift* in [a court's] analysis[.]" *Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL 177907, at *2 (E.D.Cal. Jan. 19, 2007) (emphasis added). The plaintiff in *Beckstrand*, for example, was seeking declaratory relief under the Employee Retirement Income Security Act of 1974 ("ERISA"). Following a bench trial in which the court employed an abuse of discretion standard, it entered judgment in defendants' favor.

In the meantime, the Ninth Circuit in *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir.2006) (*en banc*),[7] "changed how courts are to apply th[at] abuse of discretion standard," *Beckstrand*, 2007 WL 177907, at *2, explicitly "overrul[ing]" its prior decision in *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir.1995). *Abatie*, 458 F.3d at 966. Instead of employing *Atwood*'s burden shifting approach in ERISA conflict cases, the Ninth Circuit in *Abatie* held that the abuse of discretion analysis must, *inter alia*, be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.* Because *Abatie* "changed how the court is to review administrator decisions under" ERISA, the district court in *Beckstrand* granted plaintiff's motion to amend the judgment based upon that change in controlling law. *Beckstrand*, 2007 WL 177907, at *2; *see also Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL 1599769, at *3 (citation omitted); and at *5 (E.D.Cal. Jun. 4, 2007) (*Abatie* provides a "different analytical approach" or a "new analytical method ... for courts to employ when reviewing, for abuse of discretion, ERISA cases ... involv[ing] conflicted administrators[ ]").

7. In *Duvall v. Reliance Standard Life Ins. Co.*, 646 F.Supp.2d 1188 (E.D.Cal.2009), the court indicated that "*Abatie*'s holding ... appears to have been abrogated by the Supreme Court ... in *Metropolitan Life Insurance Company v. Glenn*, [554] U.S. [105], 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Id.* at 1198. That possible abrogation has no bearing on the above discussion.

A significant change in a court's analysis, and hence a change in controlling law, can occur short of directly overruling a prior precedent, however, as *Moretti v. Wyeth, Inc.*, 2011 WL 2580356 (D.Nev. Jun. 28, 2011), shows. The court in *Moretti* granted summary judgment in favor of the defendant drug manufacturer on two grounds. First, the court held that the warning label on a generic drug "was adequate as a matter of law because it was approved by the FDA [Food and Drug Administration] and complied with the requirement to be the same as the brand name drug." *Id.* at \*2. Second, the *Moretti* court held that the plaintiff could not "prove that any alleged deficiency in [the drug's] labeling was the proximate cause of any injury to [p]laintiff, because no genuine issue exists as to the fact that she did not read the labeling or other information provided for [the] drug." *Id.* at \*1.

After entry of final judgment, plaintiff Moretti sought "reinstate[ment] in light of the Ninth Circuit's [then] recent ruling in *Gaeta v. Perrigo Pharmaceuticals Company*," 630 F.3d 1225 (9th Cir.2011) ("*Gaeta I*"). *Id.* After *Gaeta I*, with respect to warnings, the *Moretti* court found "that despite the approval by the FDA and the compliance with the 'same as' requirement, it is 'clear that generic manufacturers, ..., *must* take specific steps when they learn of new risks associated with their products,' and '*shall* revise their drug labeling to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug.'" *Id.* (quoting *Gaeta*, 630 F.3d at 1231–1232; and citing 21 C.F.R. § 201.57(e) (2004) (emphasis added by *Moretti* court) (internal quotations omitted)). "In light of *Geata* [sic]," contrary to its prior holding, the *Moretti* court thus held that "the label's mere compliance with the same as requirement and approval by the FDA d[id] not bar

recovery and d[id] not necessarily deem the warnings adequate as a matter of law." *Id.* at \*3 (internal quotation marks omitted).

On the issue of proximate cause, the *Moretti* court also found that *Gaeta I* amounted to a "change in controlling law in ... that there are means by which generic manufacturers can amend their warnings once they learn of risks, i.e. adding an additional warning on the bottle itself[.]" *Id.* (internal quotation marks omitted). Given those changes in the controlling law, the court granted plaintiff's Rule 59(e) motion; vacated its prior order; denied defendants' summary judgment motion and ordered the case reinstated. *Id.* at \*3–\*4.[8]

*Sequoia Forestkeeper v. U.S. Forest Service*, 2011 WL 902120 (E.D.Cal. March 15, 2011), also illustrates a change in controlling law absent an outright reversal. Justice Kennedy, in his concurrence in *Rapanos v. United States*, 547 U.S. 715, 759, 126 S.Ct. 2208, 2236, 165 L.Ed.2d 159 (2006), adopted a "'significant nexus' test" for determining what constitutes "navigable waters" within the meaning of the Clean Water Act ("CWA"). After considering two Ninth Circuit cases, "which recognized Justice Kennedy's opinion in *Rapanos* to be the 'controlling rule of law,'" the district court applied that standard, holding that the water at issue was not a "navigable water" under the CWA's definition. *Sequoia Forestkeeper*, 2011 WL 902120, at \*4. Shortly thereafter, the Ninth Circuit "made clear that" courts "may also consider the plurality opinion's interpretation [in *Rapanos*] of the term 'navigable water'[.]" *Id.* Thus, because in *Sequoia Forestkeeper* the court had previously rejected the plurality definition as "not controlling[,]" it granted plaintiff's motion to reconsider the "navigable waters" issue "under the *Rapanos* plurality standard." *Id.* at \*4 n. 3.

---

**8.** Since *Moretti*, the Supreme Court granted certiorari, vacated the judgment, and remanded *Gaeta* "for further consideration in light of *PLIVA, Inc. v. Mensing*, 564 U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011)[,]" wherein the Court held, contrary to *Gaeta I*, that federal law preempts state law claims for failure to warn against generic drug manufacturers. *See L. Perrigo Co. v. Gaeta*, —— U.S. ——, 132 S.Ct. 497, 181 L.Ed.2d 343 (2011) ("*Gaeta II*"). The court

in *Moretti* declined to "rul[e] that the claims were not preempted by federal law, ... and instead ruled on the merits of the motion for summary judgment with regards to the issue of adequate warning[,]" as discussed above. *See Moretti*, 2011 WL 2580356, at \*1. Thus, *Gaeta II* does not impact the *Moretti* court's analysis of whether, at that time, *Gaeta I* constituted an intervening change in the controlling law.

**224**

In sum, the cases outlined above mark two ends of the change in controlling law spectrum. At one end, are cases which generally or substantively alter existing law, such as by overruling it, or creating a significant shift in a court's analysis. Those circumstances warrant relief under Rule 59(e). On the other end of the spectrum, cases which merely confirm, clarify or explain existing case law do not provide a basis for relief under that Rule. Guided by these principles, the court will separately consider whether either *Finisar III* or *Ernst,* or both, amount to a change in controlling law, as plaintiff strongly implies.[9]

### a. "Finisar III"

In *Apollo III,* to a certain extent, this court did rely upon *In re Finisar Corp. Derivative Litig.,* 542 F.Supp.2d 980 (N.D.Cal.2008) ("*Finisar I*"); and *In re Finisar Corp. Derivative Litig.,* 2009 WL 3072882 (N.D.Cal.2009) ("*Finisar II*"), as more fully discussed herein. And, after *Apollo III,* the Ninth Circuit in *Lynch v. Rawls,* 429 Fed.Appx. 641 (9th Cir.2011) (unpublished mem.) ("*Finisar III*") did reverse and remand *Finisar II.* Based upon *Finisar III,* plaintiff is seeking, *inter alia,* "withdraw[al]" of the *Apollo III* judgment pursuant to Rule 59(e), and to have this court "revisit [*Apollo III* ] to the extent it relied on *Finisar I* and *Finisar II* [.]" Pl.'s Mot. (Doc. 146) at 8:13–14. Although not couched strictly in terms of a controlling change in law, as will be seen, evidently that is the import of plaintiff's reliance upon *Finisar III* as a basis for seeking relief under Rule 59(e). Defendants strenuously disagree that *Finisar III* warrants granting plaintiff relief from judgment under Rule 59(e).

### i. Unpublished Memorandum

Citing to Fed.R.App.P. 32.1 and Ninth Circuit Rule 36–3, preceding the *Finisar III* memorandum it notes, "Not for Publication in West's Federal Reporter[.]" *Finisar III,* 429 Fed.Appx. 641. Within the *Finisar III* memorandum itself the Ninth Circuit unequivocally stated, "This disposition is not appropriate for publication and is *not precedent* except as provided by 9th Cir. R. 36–3." *Id.* at 642 n. ** (emphasis added).

Because arguably it is dispositive, the court will first address defendants' argument that *Finisar III* cannot be deemed a controlling change in law because it is a "non-precedential," unpublished memorandum decision. Defs.' Resp. (Doc. 148) at 6:18 (citation omitted); *see also* Apollo's Resp. (Doc. 149) at 9:24 (emphasis omitted) ("*Finisar III* is 'Not Precedent'"). In making this argument, defendants rely upon Ninth Circuit Rule 36–3(a), significantly limiting the precedential value of its "[u]npublished dispositions and orders[.]" Ninth Circuit Rule 36–3(a). Neither are "precedent, *except* when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." *Id.* (emphasis added). Because *Finisar III* is "not precedent[,]" except for the narrow purposes which Rule 36–3(a) lists, defendants contend that that memorandum "could not reflect a 'change in controlling law[.]'" Apollo's Resp. (Doc. 149) at 10:2–3.

Relying in part upon Federal Rule of Appellate Procedure 32.1, and upon subsection (b) of Ninth Circuit Rule 36–3, plaintiff counters that this court "can and should rely on *Finisar III*[.]" Pl.'s Reply (Doc. 150) at 6:2–3 (emphasis omitted). Rule 32.1 dictates in relevant part that a court "may not prohibit or restrict the citation of federal judicial

---

9. The court is compelled to comment upon plaintiff's view common to both *Finisar III* and *Ernst, i.e.* that those cases are "new authority" or "new case law[ ]" justifying relief from judgment under Rule 59(e). *See* Pl.'s Mot. (Doc. 146) at 6:8; and at 11:18. Plaintiff is misapprehending the scope of that Rule, however. If the court ultimately determines that one or both of those cases amount to a change in controlling law, then plaintiff would prevail under Rule 59(e). But, that Rule does not contemplate setting aside a judgment just because a case is "new." *See In re Intelligroup,* 527 F.Supp.2d at 381, n. 84 (citing,

*inter alia, Foman,* 371 U.S. at 182, 83 S.Ct. 227) ("discussing the filtering aspect of Rule 15(a)") ("[G]ranting Plaintiff yet another leave to amend on the grounds of issuance of new clarifying decisions would: (a) create an anomalous precedent preventing any conclusive litigation by enabling securities plaintiffs to perpetually seek leave to amend their insufficient complaints through a mere act of citing those judicial decisions, which were issued after these plaintiff[s] filed their complaints, and (b) therefore, frustrate the whole purpose of both Rule 15(a) and PSLRA.")

opinions" that are designated as " 'not for publication[.]' " Fed.R.App.P. 32.1(a)(i). Ninth Circuit Rule 36–3(b), allows "[u]npublished dispositions and orders issued on or after January 1, 2007" to "be cited to the courts of this circuit in accordance with FRAP 32.1." Ninth Circuit Rule 36–3(b).

Plaintiff fails to take into account the distinction between " 'consider[ing]' " or citing to an unpublished case, and whether such a case is tantamount to a change in controlling law, as is evident from the cases to which it cites. *See* Pl.'s Reply (Doc. 150) at 6:14 (quoting *Christian Legal Society v. Eck*, 625 F.Supp.2d 1026 (D.Mont.2009) ("*CLS*")). In both *CLS* and *CGI Techns. & Solutions, Inc. v. Rose*, 2011 WL 197772 (W.D.Wash. Jan. 19, 2011), the courts did look to unpublished Ninth Circuit cases, but they did so under entirely different circumstances than are present here. Moreover, neither *CLS* nor *Rose* even remotely suggests or implies that because a court may cite or look to such memoranda, that somehow equates to a change in controlling law.

The most significant distinction between *CLS* and *Rose* is that those courts were not confronted with the issue here: whether an unpublished memorandum can result in a change in controlling law. Moreover, the unpublished decision "freely consider[ed]" by the *Rose* court "*reasserted* the reasoning" of a prior case which "*remain*[*ed*] controlling authority in the Ninth Circuit." *Rose*, 2011 WL 197772, at *3 (emphasis added). Additionally, even without that "recent" unpublished decision, Ninth Circuit case law supported the *Rose* court's conclusion. *Id.* The foregoing reinforces the view that the issue of a possible change in law did not arise in any form in *Rose*.

*CLS*, too, involved a vastly different set of facts than the present case. In *CLS*, previously the plaintiff had "brought a strikingly similar, if not identical suit" against other defendants. *CLS*, 625 F.Supp.2d at 1031. In that earlier lawsuit, the district court granted summary judgment in defendants' favor. The Ninth Circuit affirmed in an unpublished memorandum. Consistent with Ninth Circuit Rule 36–3, because "[m]any of the Plaintiffs' ... arguments" in *CLS* "were also

raised in" their prior action, the *CLS* court "rel[ied] on [that action] for its precedential *guidance*[.]" *Id.* at 1031, n. 8 (emphasis added). As is readily apparent, *CLS* and *Rose* thus stand in sharp contrast to the present case. Consequently, the cases upon which plaintiff is relying are inapposite and have no bearing on the issue of whether an unpublished memorandum, such as *Finisar III*, can result in a change in controlling law.

Moreover, it strains logic to imply, as does the plaintiff, that the Ninth Circuit would announce a change in controlling law in an unpublished memorandum (with a dissent), having limited precedential value under the Rules of that Court. *Cf. Continental Western Insurance Co. v. Costco Wholesale Corp.*, 2011 WL 3583226, at *3 (W.D.Wash. Aug. 15, 2011) ("Whatever legal effect" federal district court decisions designated as " 'Not for Publication' ... might have, as a practical[ ] matter[,] they serve as a signal to another court that the court issuing the decision did not intend to contribute to the shaping of the law.") Standing alone, the fact that *Finisar III* is an unpublished memorandum convinces this court that that memorandum did not result in a change in controlling law as plaintiff suggests.

For the sake of completeness, however, the court will assume *arguendo* that *Finisar III*'s status as an unpublished memorandum does not foreclose the possibility that it represents a change in controlling law. Proceeding with that assumption, the court will turn to the issue of whether plaintiff has met its burden of showing that, substantively, *Finisar III* resulted in such a change.

### *ii. Merits*

■ First, some clarification is necessary. Plaintiff gives the inaccurate impression that the Ninth Circuit reversed *Finisar I*, as well as *Finisar II*. *See* Pl.'s Mot. (Doc. 146) at 6:19–21 (emphasis added) ("The Ninth Circuit's reversal [in *Finisar III* ] demonstrates that th[is] Court's reliance on *Finisar I* and *Finisar II* was misplaced."); *see also id.* at 8:8–9 (emphasis added) ("*Finisar III* demonstrates that two substantial decisions [*Finisar I* and *Finisar II* ] on which this Court relied were fundamentally flawed.") Only

*Finisar II* was appealed though. What is more, *Apollo III* cited *Finisar II*, the appealed district court decision, only twice; and, neither time did it cite *Finisar II* for a proposition later reversed by the Ninth Circuit. These are just two of the many factors severely undercutting plaintiff's theory that *Finisar III* entitles it to relief from judgment pursuant to Rule 59(e).

Plaintiff claims that *Finisar III* impacts the *Apollo III* analysis in a variety of ways. Tellingly, only one of those ways is even suggestive of a change in controlling law. Plaintiff reads *Apollo III* as "cit[ing] *Finisar I* in support of its finding that the SAC's allegations regarding the October 20, 2003 grant were not sufficient to allege that the grant had been backdated." Pl.'s Mot. (Doc. 146) at 6:22–23 (citations omitted). Plaintiff then baldly contends that *"Finisar III* fundamentally alters this analysis[;]" but it has not shown, nor could it, how that is so. *See id.* at 7:4.

To begin with, plaintiff mischaracterizes how *Finisar I* factored into this court's analysis of whether the SAC sufficiently alleged backdating as to the October 20, 2003 grants. Significantly, in *Apollo III* this court first discussed *Finisar I* because of plaintiff's reliance thereon. In responding to defendants' argument that a reasonable inference of backdating could not be drawn as to those grants because they "were publicly disclosed by the timely filing of Form 4s with the SEC[,]" plaintiff relied, *inter alia,* upon "selective quotes" from *Finisar I. See Apollo III,* 2011 WL 1253250, at *6. Distinguishing *Finisar I,* and explaining how plaintiff's reliance thereon was "unavailing[,]" this court stressed that "of the 12 purportedly backdated stock options [in that case], the Form 4s related to 9 of them were filed" *late. Id.* at *3 and *7 (internal quotation marks and citations omitted) (emphasis added by *Apollo III* court). In contrast, in *Apollo III,* "where, undisputably, the Form 4s were timely filed[,]" this court concluded that *"Finisar I*['s] ... recognition that it is 'theoretically possible' to backdate where Form 4s are late, has no bearing on the October 20, 2003 grants at issue[.]" *Id.* at *7.

*Finisar III* does not alter, much less "fundamentally alter" the foregoing because "the related Forms 4 identifying the challenged grants" in *Finisar III* "were filed months or even more than a year late, allowing ample opportunity for mischief (e.g. selecting more favorable retrospective grant dates)." *See Finisar III,* 429 Fed.Appx. at 644. Given that obvious and important factual distinction between *Finisar III* and *Apollo III, Finisar III* does not evince a change in controlling law as to whether a reasonable inference of backdating can be drawn when, *inter alia,* as here, Form 4s are timely filed.

The second way plaintiff claims that *Finisar III* "fundamentally alters" the *Apollo III* analysis is with respect to Apollo's Restatement. Based upon the SAC's allegations, which in turn, "quot[ed] verbatim" from the Restatement, in *Apollo III,* this court stressed that as to certain October 20, 2003 grants, the SAC alleged "that the *original stated grant date* is the *most likely measurement date* for ... grants" post August 2002. *Apollo III,* 2011 WL 1253250, at *5 (citations omitted) (emphasis added by *Apollo III* court). This court found that such an allegation, "especially when coupled with the timely filed Form 4s, severely erode[d] a strong inference of scienter to engage in intentional backdating as to the October 20, 2003 grants." *Id.* Plaintiff believes that *Finisar III* "fundamentally alters this analysis[ ]" as well. Pl.'s Mot. (Doc. 146) at 7:4.

Plaintiff accurately recites the *Finisar III* Court's comment that:

> Plaintiffs may rely on the self-incriminatory portions of Finisar's 10–K without having to take the 10–K's self-serving, self-exonerating conclusion of no malfeasance on behalf of the majority of Finisar's board as true. *See Williamson v. U.S.,* 512 U.S. 594, 600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)[.]

*Finisar III,* 429 Fed.Appx. at 643 n. 1 (other citation omitted). From plaintiff's viewpoint, that footnote "demonstrates that defendants' self-serving conclusions regarding whether options were backdated after 2002, or whether there was evidence of backdating, is irrelevant and carries no probative value." Pl.'s Mot. (Doc. 146) at 7:25–8:1 (citation and foot-

note omitted). Additionally, plaintiff construes that footnote as a "ruling, in almost identical circumstances presented here, [which] calls into question this Court's holding that falsity cannot be plead if plaintiff's allegations contradict Apollo's restatement." *Id.* at 7:21–23 (citation omitted).

Accepting *arguendo* plaintiff's viewpoint, as the cite to *Williamson* vividly shows, the quoted proposition had been recognized well before *Apollo III*. Thus, *Finisar III* does not change or expand the controlling law on that issue. Rather, that footnote merely confirmed the state of existing law as to self-exculpatory statements. Thus, it does not support a finding that *Finisar III* represents a change in controlling law.

Broadly stated, plaintiff's remaining claims fall into two categories: (1) those which are more appropriately raised, if at all, on appeal; and (2) those which are irrelevant because they beg the dispositive issue of whether *Finisar III* constitutes a change in controlling law.

Falling into that first category is plaintiff's contention that like the district court in *Finisar III*, this court impermissibly "drew inferences in favor of Defendants rather than Plaintiffs, resolved factual inconsistencies without discovery, and analyzed Plaintiffs' allegations individually rather than collectively." *See Finisar III*, 429 Fed.Appx. at 644.[10] The sole basis for this argument is, as discussed, the following statement in *Apollo III*, quoting verbatim from the Restatement: "Apollo generally determined the *original stated grant date* is the *most likely measurement date* for Section 16 Officer grants *after* August 2001." *Apollo III*, 2011 WL 1253250, at *5 (internal quotations and citation omitted) (emphasis added by *Apollo III* court). By focusing on this singular statement, plaintiff is doing precisely what it faults this court for doing—viewing the SAC's allegations individually, rather than collectively. That quote from the SAC, taken directly from the

Restatement, was one of a number of factors, in combination, which in the end compelled the court to find that plaintiff could not "rely upon the October 20, 2003 grants as a circumstance contributing to a strong inference of scienter[.]" *See Apollo III*, 2011 WL 1253250, at *10 (internal quotations marks, citation and footnote omitted). In any event, as is readily apparent, the foregoing amount to nothing more than a disagreement with this court's decision in *Apollo III*; but that is not a basis for the extraordinary remedy of reopening a judgment under Rule 59(e). *See Cachil Dehe Band of Wintun Indians*, 649 F.Supp.2d at 1070.[11]

Plaintiff's remaining contentions are irrelevant because, as earlier noted, they beg the critical issue of whether *Finisar III* constitutes a change in controlling law. First, plaintiff asserts that because "defendants cited at least one of the *Finisar* decisions in every single brief they submitted attacking the SAC, [they] cannot credibly claim that *Finisar III* does not represent a fundamental rejection of their contentions in support of dismissal of the SAC." *Id.* at 8:3–6 (citations omitted). Even if *Finisar III* "fundamental[ly] reject[ed]" defendants' contentions, as opposed to this court's holdings, that is irrelevant to whether *Finisar III* signaled a change in controlling law. *See id.* at 8:5.

Plaintiff's assertion that "[t]he Ninth Circuit's reversal in *Finisar* is critical because the Court and defendants relied on [*Finisar I* and *Finisar II*] extensively[ ]" similarly has no bearing on the change in controlling law issue. *See id.* at 5:6 (emphasis added). A close look at defendants' previously filed briefs, and the fact that in *Apollo III* this court cited to *Finisar II*, which was subsequently reversed, only twice (and then not for a reversed proposition), belies this assertion. Even if accurate, nothing about defendants' and the court's alleged "extensive" reliance upon *Finisar I* and *Finisar II*, could

---

10. According to plaintiff, that finding "fundamentally rejects the approach taken by the district court in *Finisar I*[,]" but as earlier noted, in *Finisar III*, the Ninth Circuit reversed and remanded *Finisar II*—not *Finisar I*. *See* Pl.'s Reply (Doc. 150) at 7:6–7 (bold emphasis added).

11. Plaintiff's remaining claims such as *Finisar III* is "inconsistent with" this court's analysis in *Apollo III*, or *Finisar III* "calls into question" an *Apollo III* holding, likewise fall into the category of issues which are more appropriately raised, if at all, on appeal. *See* Pl.'s Mot. (Doc. 146) at 6:3; 7:22.

render *Finisar III* "critical" under these circumstances.

Picking up where plaintiff left off, Apollo devotes the bulk of its *Finisar III* argument to disputing how "heavily" this court relied upon the underlying *Finisar* decisions in *Apollo III*.[12] Taking a slightly different tack, the individuals similarly dispute that they "extensively" relied upon those decisions. *See* Defs.' Resp. (Doc. 148) at 9:28–10:24–28, n. 2. This focus, by all parties, misses the point. The number of times a case is cited, by the court or the parties, whether one time or 100 times, is immaterial to the issue of whether a change in controlling law has occurred. As defendants aptly stated, "[t]he mere fact that this Court and the parties cited *Finisar I* and *II*[,]" and *Finisar II* was "later reversed does not undermine th[is] Court's [*Apollo III*] opinion[,]" absent a showing of an intervening change in controlling law. *See* Defs.' Resp. (Doc. 148) at 8:13–14 (emphasis omitted).

Also irrelevant is plaintiff's blanket statement that "*Finisar III* ... credited plaintiffs' use of a statistical analysis in alleging backdating." Pl.'s Mot. (Doc. 146) at 7:8–9 (citation omitted).[13] Plaintiff does not endeavor to show that *Finisar III* changed the controlling law with respect to the use of statistical analyses in cases of alleged backdating. More than two years prior to *Finisar III*, based upon then-extant case law, this court recognized that such analyses can play a role in alleging backdating. "Initially th[is] court found ... somewhat troubling" the FAC's omission of a statistical analysis, especially "given defendants' position that such an analysis is a necessary predicate to pleading backdating." *Apollo I*, 633 F.Supp.2d at

793. After a review of relevant case law, however, this court opined "that while a statistical analysis may be preferable, and certainly would strengthen the backdating allegations herein, *at this point* the lack of such an analysis is not fatal." *Id.* (emphasis added). The court hastened to add, "[t]hat is not to say that at some point in this litigation plaintiff's backdating allegations cannot be defeated due to the lack of a sound financial analysis, but not now." *Id.* at 794. In *Apollo III*, this court "continue[d] to adhere to the view that lack of a sound financial analysis is not critical or necessarily dispositive at the pleading stage when backdating is a part of an alleged section 10(b) fraudulent scheme." *Apollo III*, 2011 WL 1253250, at *17 (internal quotation marks and citation omitted).

Instead of explaining how *Finisar III* generally altered the substantive law regarding the use of statistical analyses in a case such as this, plaintiff takes a somewhat unusual tack. Plaintiff declares that "[b]ecause ... th[is] Court expressly stated that such an analysis was *not* required ..., [they] did not include one in the SAC." Pl.'s Mot. (Doc. 146) at 7:13–14 (citation omitted) (emphasis in original).[14] Plaintiff's strained reading of *Apollo I* is problematic, although the court is willing to disregard it. The court is unwilling, however, to countenance plaintiff's seeming failure to take responsibility for what appears to be a calculated strategy on its part—to delay including a statistical analysis until it was backed into a legal corner. Its two prior complaints had been found wanting in a number of critical ways. But, literally at the eleventh hour, or so it appears, plaintiff

---

**12.** *See* Apollo's Resp. (Doc. 149) 12–19 (concluding after a nearly three page analysis, "[i]n sum, Plaintiff's assertion that the Court relied heavily on the underlying district court *Finisar* decisions is simply false[ ]").

**13.** There, plaintiffs "included a statistical 'Merrill Lynch' type analysis[,]" which "calculates the annualized returns of options grants at twenty days after the grant and compares it with the company's overall annual return." *Finisar III*, 429 Fed.Appx. at 644 and at n. 2. The *Finisar III* plaintiffs used that analysis "to demonstrate that the disputed options were granted at periodic lows in stock price and/or before substantial increases in stock price, and resulted in annualized

returns for directors and officers ranging from 200% to more than 3000%, compared to much smaller or even negative returns for average investors." *Id.*

**14.** Plaintiff does indicate that "in light of" *Apollo III*, they "are undertaking the same kind of statistical analysis as was expressly sanctioned by *Finisar III*." Pl.'s Mot. (Doc. 146) at 7:15–16. And, the draft third amended complaint ("DTAC") which plaintiff attaches to its reply herein, "include[s] such an analysis performed by an independent expert." Pl.'s Reply (Doc. 150) at 15:5–6 (citation omitted).

presents a DTAC which it believes can cure the numerous pleading deficiencies identified by this court in two prior comprehensive decisions. This is akin to "rais[ing] arguments or present[ing] evidence for the first time when they could reasonably have been raised earlier in the litigation[.]" *See Herron*, 634 F.3d at 1112 (citation and internal quotation marks omitted). That, in turn, "raise[s] the concern" of "abuse[ ] of Rule 59(e)[.]" *See id.* Plaintiff's timing notwithstanding, despite the many and varied ways in which it undertook to establish that *Finisar III* constitutes a change in controlling law, plaintiff has not met its burden. Fundamentally, it defies logic to assert that a change in controlling law would be announced in an unpublished memorandum. Beyond that, plaintiff has wholly failed to show that *Finisar III* "generally alter[ed]" or "create[ ]d a significant shift" in the pertinent substantive law. *See Schiller*, 342 F.3d at 568 n. 3; *Beckstrand*, 2007 WL 177907, at *2. At the very most, it is possible to read *Finisar III* as "merely confirming," or "merely clarif[ying] or explain[ing]" the state of existing law. *See Schiller*, 342 F.3d at 568 n. 3; *Campbell*, 168 F.3d at 269. Such confirmation is not equivalent to a change in controlling law sufficient as courts define it, however. Thus, the only way plaintiff can prevail on its change in controlling law theory is if it can show that *Ernst* constituted such a change.

#### b. "Ernst"

Not long after entry of the *Apollo III* judgment, the Ninth Circuit in *Ernst* reversed and remanded the dismissal of a securities fraud complaint for failure to adequately plead scienter. That lawsuit had its genesis in an "improper stock option backdating scheme" by Broadcom Corporation, a semiconductor company. *Ernst*, 641 F.3d at 1093. As a result of that scheme, Broadcom issued a Restatement of its financial statements, wherein it "acknowledged that [i]t had improperly accounted for $2.2 billion in income, largely due to improper option backdating." *Id.* "Additionally, every financial statement, and quarterly and annual report issued during the time period covered by the Restatement, was false and misleading." *Id.*

Broadcom therefore "agreed to a civil penalty of $12 million in connection with a SEC [Securities Enforcement Commission] civil securities fraud investigation[.]" *Id.*

Broadcom shareholders then brought a securities fraud action against Ernst & Young ("EY"), Broadcom's outside auditors, for "fraudulent accounting practice, alleging they caused Broadcom's stock price to be artificially inflated." *Id.* at 1092–1093. Plaintiff alleged that EY "knew of, or recklessly disregarded, Broadcom's fraudulent backdating actions yet issued unqualified audit opinions attesting to the validity of Broadcom's financial statements." *Id.* at 1092. The district court dismissed the complaint for failure to adequately plead scienter against EY.

Reversing, the Ninth Circuit held that plaintiffs had adequately plead scienter "based on three specific points when EY was faced with circumstances that would compel a reasonable auditor to further investigate and disclose Broadcom's backdating of options[.]" *Id.* at 1095. The *Ernst* Court found the following "factual allegations were each sufficient to support an inference of scienter by EY[:]

(1) a large grant of options on May 26, 2000 for which EY was given no documentation;

(2) options granted in 2001 during a period when Broadcom's compensation committee did not have a quorum due to the death of one of its members; and (3) EY's direct involvement in 2003 with corrective reforms to Broadcom's prior options practices."

*Id.* Thus, the *Ernst* Court found "a holistic review … unnecessary[.]" *Id.* Nonetheless, the Court found that "these primary allegations supported an inference of scienter when viewed collectively with other claims that EY received no documentation for many option grants, knew Broadcom's internal controls were weak, and ignored other red flags." *Id.*

Rather than explaining how *Ernst* constitutes a change in controlling law, plaintiff's motion centers on what it believes are the similarities between the *Ernst* allegations and the SAC's allegations examined in *Apollo III*. Plaintiff asserts, for example, that "[t]he

description of Broadcom's restatement was strikingly similar to Apollo's restatement." Pl.'s Mot. (Doc. 146) at 9:14–15. Plaintiff likewise claims that "the allegations of falsity [15] contained in the complaint that the [Ninth Circuit] [16] upheld ... were substantially similar to the allegations contained in the SAC at issue here." *Id.* at 9:5–8 (citation and footnote omitted) (footnote added). Given these claimed similarities, and others, in its motion plaintiff argues that *"Ernst confirms* that [it] ha[s] stated a claim arising from Apollo's practices of issuing non-management grants without having actually set a grant date." *Id.* at 10:17–18 (citations omitted) (emphasis added).

Deeming the foregoing as an argument that *Ernst* reflects a change in controlling law, defendants' response is three-fold. First, *Ernst* does not reflect a change in controlling law as that Court was "restat[ing] long standing principles of law," and "appl[ying] precedents that this [c]ourt also applied in" *Apollo III.* Apollo Resp. (Doc. 149) at 17:10–12 (citations omitted). Second, *Ernst* is irrelevant because the issue there was the sufficiency of scienter allegations against an outside auditor—not, as here, the sufficiency of falsity allegations. Third, as Apollo put it, *Ernst* involved "radically different facts" than those which the SAC alleges. *See id.* at 16:10.

In rejoinder, plaintiff claims that defendants are "wrong that *Ernst* merely applied existing law and cannot be considered new authority." *See* Pl.'s Reply (Doc. 150) at 10:21 (citation omitted). Plaintiff observes that **"Apollo** still cites *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,* 595 F.Supp.2d 1253, 1277 (M.D.Fla.2009) for the proposition that the accounting issues in this action are highly technical." *Id.* at 10:22–25 (citation omitted) (bold emphasis added). "Yet," according to plaintiff, *Ernst* "rejects

such contentions with respect to determining a measurement date in these circumstances under APB 25." *Id.* at 10:25–26 (citation omitted).

Standing alone, a party citing a case, as Apollo did *Jabil,* is not, in the slightest, indicative of a change in controlling law. Such a change could be shown if, for example, *Apollo III* cited *Jabil* for a proposition which *Ernst* later overruled. That is not the situation here, however. *Apollo III* cited *Jabil* once, to "bolster[ ]" its "conclusion" that the timely filing of Forms 4 by defendants Nelson and Gonzales "negate[d]" an inference of scienter. *See Apollo III,* 2011 WL 1253250, at *5. Hence, in *Apollo III,* this court's reliance upon *Jabil* had nothing to do with APB 25. Plaintiff has, therefore, utterly failed to show how *Ernst* resulted in a change in controlling law based upon the foregoing.

Further, even if, as plaintiff describes it, *Ernst* is "one of the only decisions from the Ninth Circuit specifically addressing allegations of stock option backdating, and *provid[ing] guidance* regarding such claims which at best had only been previously discussed by district courts in this Circuit[,]" Pl.'s Reply (Doc. 150) at 10:27–12:2 (emphasis added), that is not equivalent to a change in controlling law. "[P]roviding guidance" is far afield from generally or substantively altering existing law, or creating a significant analytical shift in the law.

Plaintiff's discussion of *Ernst* was a continual effort to draw similarities between the allegations in that case and those in the SAC. That discussion did nothing to advance plaintiff's argument that *Ernst* constitutes a controlling change in law. Trying to draw factual similarities between two cases is a very different analysis than explaining why a case amounts to a change in controlling law. That

---

**15.** Actually, the issue in *Ernst* was the sufficiency of the scienter allegations under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), which requires the weighing of competing inferences. "[W]hile the scienter and falsity inquiries overlap significantly[,]" *Scott v. ZST Digital Networks, Inc.,* 2012 WL 538279, at *8 (C.D.Cal. Feb. 14, 2012), those terms are not completely interchangeable.

**16.** Plaintiff actually stated that the "district court" upheld the allegations in *Ernst.* Pl.'s Mot. (Doc. 146) at 9:6. Obviously plaintiff is mistaken. It was the Ninth Circuit, in reversing the district court's ruling granting EY's motions to dismiss, that "upheld" the sufficiency of those allegations.

latter analysis is wholly missing here. As with *Finisar III,* plaintiff thus has not met its burden of establishing that *Ernst* amounts to a change in controlling law. This finding renders moot defendants' assertions that *Ernst* also is factually and legally irrelevant.

In short, plaintiff did not meet its burden of proof in showing that either *Finisar III* or *Ernst* constituted a change in controlling law so as to warrant setting aside the judgment in this case.

### 2. *"Manifestly Erroneous" and "Clear Error"*

Here, the plaintiff also is seeking relief from the judgment asserting: (1) it was "manifestly erroneous" to dismiss certain false statements, Mot. (Doc. 146) at 11:21 (emphasis omitted); and (2) the court "committed clear error" in denying amendment of the SAC. Reply (Doc. 150) at 13:18. Manifest error is, effectively, clear error. *See Ybarra v. McDaniel,* 656 F.3d 984, 998 (9th Cir.2011) (internal quotation marks and citation omitted) ("A rule 59(e) motion may be granted if[,] [for example,] ... the district court committed clear error or made an initial decision that was manifestly unjust[.]"). So the same standards govern these remaining two aspects of plaintiff's motion.

■ The difficulty lies, however, in the lack of a definition of clear error for Rule 59(e) purposes in the Ninth Circuit. *Campion v. Old Republic Home Protection Co.,* 2011 WL 1935967, at *1 (S.D.Cal. May 20, 2011). The Ninth Circuit is not alone; "[c]ourts have generally not defined what constitutes 'clear error' under [that] Rule[.]" *Pet Food Express Limited v. Royal Canin USA, Inc.,* 2011 WL 6140874, at *4 (N.D.Cal. Dec. 8, 2011) (internal quotation marks and citation omitted). Given that lack of definition, as in *Campion* and *Pet Food Express,* courts routinely look to the "clearly erroneous" standard invoked in the context of the law of the case doctrine. In that context, " 'clearly erroneous' is a very exacting standard[,]' " *Campion,* 2011 WL 1935967, at *1 (quoting *Hopwood v. Texas,* 236 F.3d 256, 273 (5th Cir.2000) (citation omitted)), such that "a court should have a clear conviction of error." *Pet Food Express,* 2011 WL

6140874, at *4 (internal quotation marks and citation omitted). Thus, " '[m]ere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice[.]' " *Campion,* 2011 WL 1935967, at *1 (quoting *Hopwood,* 236 F.3d at 273 (citation omitted)). " 'To be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must be dead wrong.' " *Id.*

Within the Ninth Circuit, courts also have looked to Black's Law Dictionary, stating that "[a] manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.' " *See, e.g. In re Wahlin,* 2011 WL 1063196, at *2 (Bankr.D.Idaho March 21, 2011) (quoting *In re Oak Park Calabasas Condo. Ass'n,* 302 B.R. 682, 683 (Bankr. C.D.Cal.2003); quoting in turn Black's Law Dictionary 563 (7th ed. 1999)). This definition comports with the Seventh Circuit's "high standard for a party filing a motion for reconsideration on the basis of error[.]" *Campion,* 2011 WL 1935967, at *1. In that Circuit, "the movant must demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citation and internal quotation marks omitted). By the same token, "manifest error of law is not merely a party's disagreement with how the trial court applied the law." *In re Wahlin,* 2011 WL 1063196, at *2. Nor is "[m]anifest error ... demonstrated by the disappointment of the losing party." *Id.* (Citations and internal quotation marks omitted).

With these standards firmly in mind, the court will first discuss whether, as plaintiff contends, it was "manifestly erroneous" for this court to dismiss certain allegedly false and misleading statements in *Apollo I.*

### a. *APB 25, IRS Code § 162(m) & SOx Certifications*

For a number of the SAC's allegedly false and misleading statements, including those pertaining to compliance with IRS Code § 162(m) and APB No. 25, and the SOx certifications (Nos. 36–48), the Restatement was the sole basis for pleading falsity. *See*

*Apollo III*, 2011 WL 1253250, at \*27. Dismissing the foregoing statements, among others, for failing to plead falsity with the requisite particularity, this court concluded:

> The SAC's reliance on the Restatement does not provide the necessary particularity because it does not draw a specific nexus between the allegedly fraudulent statement and the facts upon which the allegation of fraud is dependent[,] *i.e.* the Restatement, or, at least, a clear statement of why and how the plaintiff has reached the conclusion that a particular statement is fraudulent. . . . Even if the SAC provided that missing link, it still could not withstand these dismissal motions because in relying upon the Restatement as a basis for falsity, the SAC does not always comport with the Restatement.

*Id.* (internal quotation marks and citation omitted). Plaintiff argues that dismissal of false statements 36–48 on that basis "was manifestly erroneous[,]" but it does not identify any specific error, let alone a manifest or clear error. *See* Pl.'s Mot. (Doc. 146) at 11:25–26 (citations omitted). Instead, plaintiff first urges this court to reach a different result by examining three paragraphs in the SAC, "coupled" with what it terms the "compelling allegations of . . . scienter that the Court found sufficient in" *Apollo I. Id.* at 12:3–4.

Plaintiff's suggested approach has two significant shortcomings. First, this is a thinly veiled attempt " 'asking the court to rethink what it ha[s] already thought through—rightly or wrongly.' " *See Occupy Fresno v. County of Fresno*, 2011 WL 6066500, at \*1 (E.D.Cal.2011) (quoting *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998) (other quotation marks and citation omitted)). The court declines to do so.

■ Second, the issue of the falsity of such statements was briefed by the parties and examined in *Apollo III*.[17] Plaintiff did not like the outcome in *Apollo III;* now, it is seeking a different one. However, manifest error is not "demonstrated by the disappointment of the losing party." *In re Wahlin*, 2011 WL 1063196, at \*2, *id.* (citations and internal quotation marks omitted). Further, as this court has previously stated, "a motion for reconsideration is not designed merely to provide a dissatisfied litigant with additional opportunity to sway the Court." *Hassayampa Steering Committee v. Arizona*, 1991 WL 71769, at \*1 (D.Ariz. March 26, 1991) (citation omitted), *aff'd without pub'd opinion*, 942 F.2d 791 (9th Cir.1991). Additionally, simply stating, as plaintiff does, that a given finding was "manifestly erroneous," does not make it so.

---

**17.** Plaintiff states that *Apollo III* dismissed the allegedly false and misleading statements pertaining to APB 25, IRC § 162(m) and the false SOx certifications "with one line, implying that because it found . . . plaintiff's allegations of falsity insufficient with respect to Apollo's financial statements, allegations with respect to APB 25, IRC § sec. 162(m) and false SOx certifications must also necessarily fail." Reply (Doc. 150) at 11:20–23 (citation omitted). That is an accurate statement, but to the extent it gives the impression that *Apollo III* did not adequately consider those types of false statements, the court disagrees. The "impl[ication]" was strong and patently obvious, given the analysis preceding the dismissal line, as the following excerpt shows:

> The SAC's broad, conclusory allegations that Apollo overstated its net income and understated its compensation expenses as a result of granting stock options below the fair market value of Apollo's common stock on the date of the grant do not satisfy the exacting pleading standards of the PSLRA and Rule 9(b). The SAC's reliance on the Restatement does not

provide the necessary particularity because it does not 'draw a specific nexus between the allegedly fraudulent statement and the facts upon which the allegation of fraud is dependent[,]' i.e. the Restatement, 'or, at least, a clear statement of why and how the plaintiff has reached the conclusion that a particular statement is fraudulent.' *See* [*In re*] *Ferro* [*Corp.*], 2007 WL 1691358, at \*19 (citation, internal quotation marks and emphasis omitted). Even if the SAC provided that missing link, it still could not withstand these dismissal motions because in relying upon the Restatement as a basis for falsity, the SAC does not always comport with the Restatement. Consequently, the court grants defendants' motions to dismiss insofar as it is predicated upon those false and misleading statements where the Restatement is the sole basis for pleading falsity . . . . That includes the allegations pertaining to compliance with IRS Code § 162(m) and APB No. 25, and the SOx certifications. . . .

*Apollo III*, 2011 WL 1253250, at \*27 (citations omitted).

Plaintiff devotes the remainder of its argument regarding the dismissal of certain false and misleading statements to discussing *Glazer Capital Management, LP v. Magistri,* 549 F.3d 736 (9th Cir.2008). Plaintiff maintains that that case "illustrates" that "defendants' SOx certifications and their statements regarding [Apollo's] compliance with APB 25 and IRS § 162(m) [] ... were pled with the requisite particularity." Pl.'s Mot. (Doc. 146) at 12:24. Plaintiff strenuously contends that "[t]he allegations with respect to defendants' compliance with APB 25 and IRC § 162(m) are *far stronger* than plaintiff's allegations in *Glazer.*" Pl.'s Reply (Doc. 150) at 12:11–12 (emphasis in original).

Notably, plaintiff cited to *Glazer* in its opposition to defendants' motion to dismiss the SAC, but for a different proposition than it now does. At that time, plaintiff accused defendants of "confusing falsity and scienter"—a "tactic[] ... rejected" in *Glazer.* Pl.'s Omnibus Opp'n to Defs.' Motions to Dismiss the SAC (Doc. 129) at 21:9–11 (citation omitted). Thus, obviously plaintiff was aware of *Glazer* in opposing defendants' motions to dismiss the SAC. And even though, as plaintiff now contends, *Glazer Capital* "provides a clear example of how simple [a] task [it] can be" to satisfy the PSLRA's heightened pleading standards as to falsity, Pl.'s Mot. (Doc. 146) at 12:24, plaintiff did not make that argument until this motion to alter or amend the judgment.

"It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him[,]" yet that is precisely what plaintiff is attempting here by belatedly relying upon *Glazer Capital* to support upholding certain false and misleading statements in the SAC. *See Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir.1995). Further, plaintiff is improperly using this motion to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."

*See Marlyn Nutraceuticals,* 571 F.3d at 877 (quoting *Kona Enterprises,* 229 F.3d at 890). Were this court to countenance allowing amendment where, as here, plaintiff has done nothing more than "request" leave to amend without providing any factual or legal justification whatsoever, compounded by not submitting a proposed amended complaint, "*some* lawsuits might never end, rather than just seeming endless." *See Frietsch,* 56 F.3d at 828 (Posner, J.) (emphasis added).

### b. *Leave to File Motion to Amend*

In the last part of this motion plaintiff argues that this court committed clear error by not giving it "an opportunity to amend the [SAC] prior to dismiss[al] ... with prejudice" in *Apollo III.* Pl.'s Mot. (Doc. 146) at 13:16–17 (emphasis omitted). Hence, plaintiff is seeking to have the judgment reopened and modified pursuant to Rule 59(e) to allow it to "file a motion to amend the [SAC] to cure any defects still remaining[.]" *Id.* at 18:1–2. The defendants raise three procedural challenges to this aspect of plaintiff's motion—all of which can be readily disposed of before turning to the merits.

### i. *"Jurisdiction"*

Stressing that this "[m]otion *is* a motion for leave to amend, the defendants assert that the court "lacks jurisdiction to entertain" such a motion "if it denies the Rule 59(e) motion[.]" Defs.' Resp. (Doc. 148) at 17:28 (emphasis in original); and 17:18. In *Lindauer v. Rogers,* 91 F.3d 1355 (9th Cir. 1996), the Ninth Circuit "adopted the requirement that, once judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Id.* at 1357. The defendants contend that the *Lindauer* "requirement" effectively bars the amendment aspect of plaintiff's Rule 59(e) motion.

The defendants misapprehend the nature and scope of the current motion, however.[18]

---

18. To a certain extent, the defendants' misapprehension is understandable, given plaintiff's explicit "request that the Court modify the Order to provide plaintiffs with an *opportunity to replead* their claims[.]" *See* Pl.'s Mot. (Doc. 146) at 13:18–19 (emphasis added). Immediately there- after, however, plaintiff does indicate that it will be prepared to file an amended complaint *and* a motion to amend[]" after the resolution of this motion. *Id.* at 13:21–22 (emphasis added). Plaintiff echoes that request in concluding its motion. *See id.* at 18:1–3. Further, although the

Plaintiff is not arguing that it should be granted leave to amend now. Rather, plaintiff is claiming that it was clear error in the first instance in *Apollo III* to dismiss the SAC with prejudice and without permitting amendment. On that basis, among others, plaintiff is seeking to have the judgment reopened and modified pursuant to Rule 59(e) to "permit [it] to *file a motion to amend* the [SAC] to cure any defects still remaining." *See* Reply (Doc. 150) at 13:11–12 (internal quotation marks and citation omitted) (emphasis added). Accordingly, because plaintiff's motion is not, as the defendants construe it, a motion for leave to amend, *Lindauer* and its progeny are inapplicable here. Thus, as plaintiff frames it, the amendment issue is properly before this court as part of its motion for relief from judgment under Rule 59(e).

### ii. *Governing Legal Standards*

The defendants' second, related argument is that because final judgment has been entered, "Rule 15(a)'s liberal principles do not apply[.]" Defs.' Resp. (Doc. 148) at 18:6–7 (emphasis omitted). Defendants contend that "Plaintiff must overcome Rule 59(e)'s 'high hurdles' and show" it was "clear error" for this court to deny plaintiff leave to amend in *Apollo III. See id.* at 19:1–3 (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir.2001)). The defendants' position is well-taken. In analyzing whether it was clear error to dismiss the SAC with prejudice and without leave to amend, the case law discussed in section 2 above, albeit scant, guides this court's inquiry. *Accord Fannon v. Guidant Corp.*, 583 F.3d 995, 1003–1004 (7th Cir.2009) (where investors moved to set aside the judgment and for leave to file an amended complaint, Rule 59(e) rather than Rule 15(a) standards applied).

### iii. *LRCiv. 5.1*

▬ Again characterizing this aspect of plaintiff's motion as one "for leave to amend[,]" the defendants urge "outright" denial "because the Plaintiff, *yet again,* has failed to comply with [LRCiv] 15.1." Defs.' Resp. (Doc. 148) at 19:7–9 (emphasis added). As this court highlighted in *Apollo III* when commenting upon plaintiff's failure to provide a proposed amended complaint:

> [T]hat [Local] Rule requires that if "[a] party *moves* for leave to amend," it "*must* attach a copy of the proposed amended pleading[,]" and it "*must* indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added."

*Apollo III*, 2011 WL 1253250, at *37 n. 28 (emphasis added in *Apollo III*). At the risk of repetition, in the pending Rule 59(e) motion, plaintiff is not moving to amend the SAC. That is the relief which it desires in moving to reopen the judgment; it wants to be able to file such a motion. Thus, because at this juncture plaintiff is not moving to amend the SAC, the lack of a proposed amended complaint is not fatal to its Rule 59(e) motion.

### iv. *"Clear Error"*

▬ Having found no procedural barriers to the amendment aspect of plaintiff's motion, the court is now free to address the merits. In its reply,[19] plaintiff asserts that this court "committed clear error by failing to follow leading precedents on leave to amend[,]" *i.e., Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), and *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Reply (Doc. 150) at 13:18–19. More specifically, plaintiff asserts that it was clear error to deny amendment based upon "a finding that

defendants could not have known it when they filed their responses, plaintiff's reply reiterates that it is "ask[ing] the Court to grant *this Rule 59(e) motion* so they *may file* a *motion to amend.*" Reply (Doc. 150) at 15:18–19 (emphasis added).

19. Once again disregarding the standards for relief under Rule 59(e), plaintiff claims that *Apollo III*'s amendment analysis was *"inconsistent* with Ninth Circuit law[,]" and that "denial of

leave to amend was *inappropriate." See* Pl.'s Mot. (Doc. 146) at 14:25; and at 15:21 (emphasis added). As earlier discussed, however, to obtain the "extraordinary remedy" of amending a judgment under that Rule, *Herron*, 634 F.3d at 1111 (citation and internal quotation marks omitted), requires a much more stringent showing, which, as indicated above, plaintiff did recognize in its reply.

amendment would be futile[,]" and this court's prior warning that plaintiff's claims "could be dismissed if not properly pled on amendment[ ] ... without discussing *Eminence* or the *Foman* factors." Mot. (Doc. 146) at 14:21–25. Plaintiff also argues that "[a]mendment would not be futile because [it] can ... address the deficiencies identified in [*Apollo III* ][.]" *Id.* at 14:25–26 (bold emphasis omitted). Plaintiff advances that argument another step in its reply. Based upon the DTAC, belatedly attached thereto, plaintiff claims that now it can "*demonstrate* that *leave to amend* would *not* be *futile* [.]" *See* Reply (Doc. 150) at 14:24, n. 2; 13:1–2 (emphasis added).

Defendants counter that plaintiff cannot show clear error given a district court's "particularly broad" discretion to deny leave to amend where "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims[.]" *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir.2009) (internal quotation marks and citations omitted). Additionally, they argue that the court properly dismissed the SAC with prejudice because plaintiff did not set forth any facts that could cure the SAC's deficiencies. Further, defendants dispute plaintiff's assertion that it can "correct any discrepancies and inconsistencies between the [SAC]'s allegations and the accounting errors admitted as part of Apollo's restatement[.]" *See* Mot. (Doc. 146) at 16:11–13. Based upon certain findings in *Apollo III*,[20] defendants contend that the inconsistencies which *Apollo III* identified are "incurable[.]" Defs.' Resp. (Doc. 148) at 22:1. Finally, plaintiff cannot show clear error, from defendants' standpoint, because there is Ninth Circuit precedent affirming denial of leave to amend a SAC after one amendment as a matter of course, and one dismissal with prejudice. *See Zucco Partners*, 552 F.3d at 1007.

Before delving into these arguments, a fairly close examination of how the issue of amendment arose in *Apollo III*, and this court's reasoning is necessary. In opposing defendants' motions to dismiss the SAC, in the last sentence of plaintiff's opposition, it merely stated: "Should the Court grant any portion of defendants' motions to dismiss, ... plaintiff respectfully *requests* leave to amend." Pl.'s Resp. (Doc. 129) at 39:20–22 (emphasis added). That single sentence was the only mention of amendment in plaintiff's opposition. Plaintiff did not proffer any reasons whatsoever as to why it should be allowed to amend its complaint after having been given the opportunity to do so once as a matter of right in *Apollo I*. Plaintiff claims that defendants did not "oppose" that request, Mot. (Doc. 146) at 13:20, but actually their replies were silent on the amendment issue. *See Apollo III*, 2011 WL 1253250, at *36.

In considering plaintiff's "perfunctor[ ]y 'request[ ]' " for leave to amend, this court found that " 'request' ... a somewhat telling, although not entirely dispositive, distinction." *Id.* at *37 n. 28. Giving plaintiff considerable leeway,[21] this court also found that "[b]ecause plaintiff sought leave to amend in the form of a request arguably it was not required to attach a proposed amended complaint or otherwise comply with the dictates of LRCiv 15.1." *Id.* This court raised the possibility, however, that "plaintiff made th[at]'request' as a means of circumventing that Local Rule and because it does not have any additional facts." *Id.* "Otherwise, surely plaintiff would have brought them to the attention of the court and defendants[,]" this court reasoned. *Id.*

In *Apollo III*, this court reiterated that in previously allowing amendment, it had "explained that '[t]he pleading deficiencies in the FAC did not lie in the raw content of the FAC, but in the absence of rigorously particularized allegations in accordance with the PSLRA.' " *Apollo III*, 2011 WL 1253250, at *36 (quoting *Apollo I*, 633 F.Supp.2d at 832) (other citations and internal quotation marks omitted). Further, this court commented that earlier it had "expressly 'advised' plaintiff 'that failure to cure the pleading deficien-

---

**20.** *See* Defs.' Resp. (Doc. 148) at 16:19–22:5

**21.** The court just as easily could have deemed plaintiff's "request" to be a motion and denied it

for non-compliance with LRCiv 15.1, leaving plaintiff with little recourse in terms of amendment.

cies identified therein, *and* failure to comply with the relevant case law in that regard, *may well lead to dismissal* of these claims *in the future.'"* *Id.* (quoting *Apollo I,* 633 F.Supp.2d at 832) (emphasis added by *Apollo III* court). Moreover, well before *Apollo III,* in its motion to reconsider *Apollo I,* filed on April 2, 2009, plaintiff had explicitly "acknowledged that it [was] [m]indful that [*Apollo I*] required [it] to amend [its] Complaint to more particularly allege[ ] . . . falsity[.]" *Id.* (citations and internal quotation marks omitted). "Nonetheless, even after amendment, as thoroughly discussed [in *Apollo III*], the hallmark of the SAC [wa]s, *still,* the absence of rigorously particularized allegations in accordance with the PSLRA[ ] and Rule 9(b)." *Id.* (citation and internal quotation marks omitted) (emphasis added).

In light of that history, in *Apollo III,* the court started with this settled proposition: "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.'" *Id.* (quoting *Zucco Partners,* 552 F.3d at 1007 (citations and internal quotation marks omitted)). This court further noted the Ninth Circuit's "repeated[ ] recogni[tion]" that a plaintiff's failure "to correct the deficiencies in its [FAC] is 'a strong indication that the plaintiffs have no additional facts to plead.'" *Id.* (quoting *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1098 (9th Cir.2002)). "Likewise," this court explained, "[w]here the plaintiff fails to set forth any additional facts that could save the complaint, . . ., dismissal with prejudice is appropriate." *Id.* (quoting *Finisar II,* 2009 WL 3072882, at *15 [22] (citing, *inter alia, In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 991 (9th Cir.1999), *abrogated on other grounds, Tellabs,* 551 U.S. at 322–24, 127 S.Ct. 2499, 168 L.Ed.2d 179)) (footnote added).

Applying those principles, in *Apollo III,* this court enumerated the following reasons for dismissing the SAC with prejudice and without leave to renew. First, "[p]laintiff ha[d] been given the opportunity to amend once, following a fairly comprehensive analysis of the FAC's deficiencies and overall weaknesses." *Id.* at *37. Second, "[t]he SAC did not correct those deficiencies; nor [did] plaintiff offer[ ] any additional facts in its response that could be alleged in a third amended complaint, and that would save the SAC from dismissal with prejudice." *Id.* (footnote and citation omitted). Third, "in contrast to many securities fraud cases, plaintiff's allegations herein are not based upon the statements of confidential witnesses and/or employees and former employees[.]" *Id.* (citation and internal quotation marks omitted). "Therefore, . . . it is difficult to imagine what additional facts Plaintiff could allege to satisfy the strict pleading requirements of the PSLRA and Rule 9(b)." *Id.* (citation and internal quotation marks omitted). Fourth, the court observed that plaintiff was "represented by experienced counsel who routinely practice in the area of securities class action litigation, were given an adequate opportunity to file an amended complaint addressing this court's concerns in *Apollo I,* and satisfying the governing pleading standards as developed in the applicable case law." *Id.* (footnote omitted). "Plaintiff did not avail itself of that opportunity[,]" however. *Id.*

Plaintiff has not satisfied the stringent standards for establishing clear error on this record for a variety of reasons. First, the Ninth Circuit grants courts "particularly broad discretion," to deny leave to amend "[w]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to the claims[.]" (*Zucco Partners,* 552 F.3d at 1007; quoting in turn *In re Read–Rite Corp,* 335 F.3d 843, 845 (9th Cir.2003); quoting in turn *Vantive,* 283 F.3d at 1097–98). That was the situation in *Apollo III.*

This court found In *Apollo I* that the FAC did "not satisfy the heightened pleading standards for fraud under either Rule 9(b) or the PSLRA[,]" due to a number of pleading irregularities outlined therein. *Apollo I,* 633 F.Supp.2d at 786. Rather then "tak[ing] the drastic step of dismissal based on . . . form[,]" the court "require[d] . . . plaintiff to streamline and reorganize

---

**22.** The Ninth Circuit did reverse *Finisar II,* but    not on this basis.

the complaint before allowing it to serve as the document controlling discovery." *Id.* (citation and internal quotation marks omitted). The court instructed plaintiff, to "be clear and concise in identifying the false statements and articulating the factual allegations supporting an inference that the statement is false or misleading." *Id.* at 786–787 (citation and internal quotation marks omitted). Plaintiff attempted to do that, but as *Apollo III* comprehensively discussed, "[t]he SAC's changes in form only highlight[ed] [its] substantive deficiencies ..., revealing that it does not plead falsity with the requisite degree of particularity." *Apollo III,* 2011 WL 1253250, at *18.

Plaintiff disregards that "particularly broad discretion," as well as *Apollo III's* rationale. Plaintiff focuses instead on the fact that in *Apollo III* this court did not "discuss[ ] the *Foman* factors[,] [23]" or *Eminence Capital,* as it did in *Apollo I.*[24] Mot. (Doc. 146) at 14:21. With respect to the *Foman* factors, plaintiff implies that a court has no latitude at all and must always discuss those factors when faced with the issue of amendment. In *Eminence Capital,* the Ninth Circuit did reiterate, "[a] district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice *may* constitute an abuse of discretion." *Eminence Capital,* 316 F.3d at 1053 (citations omitted) (emphasis added). Given that permissive language, the court does not read Ninth Circuit case law as restrictively as plaintiff does. That is especially so where, as here, experienced counsel, fully aware of the PSLRA's rigorous pleading standards, in effect, chose to "roll the dice." They did that by off-handedly requesting leave to amend without providing any legal or factual justification whatsoever. *Cf. James Cape & Sons Co. v. PCC Const. Co.,* 453 F.3d 396, 401 (7th Cir.2006) (no abuse of discretion in dismissal with prejudice where, even construing plaintiff's "expressed ... intention to 'describe in even greater detail the damages it suffered[ ]' ... in the penultimate paragraph of

its response to defendants' motion to dismiss[ ]" as a "proper[ ] mo[tion] to amend," the district court "had no way of knowing what the proposed amendment entailed[ ]"). Compounding those omissions was that plaintiff sought amendment in the form of a "request," seemingly, it now appears, to circumvent LRCiv. 15.1's requirement of submitting a proposed amended complaint, showing "in what respects it differs from the pleading which it amends[.]" *See* LRCiv 15.1.

While claiming that it was clear error not to discuss the *Foman* factors in *Apollo III,* at the same time, plaintiff readily concedes that one of the *Foman* factors—futility—was a basis for denying leave to amend. *Id.* at 14:21–22 (citation omitted) ("[T]he Court refused to grant leave to amend based on ... a finding that amendment would be futile[.]") This concession weakens plaintiff's contention that *Apollo III's* " 'failure to consider the relevant factors' (*Eminence Capital,* 316 F.3d at 1052) is 'clear error' requiring the altering of the judgment under Rule 59(e) [.]" Reply (Doc. 150) at 11–13 (other citation omitted).

Further weakening plaintiff's position is the fact that, in accordance with *Foman,* there were both "apparent [and] declared reason[s]" for denying amendment, as the earlier discussion of amendment in *Apollo III* shows. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227. In *Foman* either "apparent *or* declared reason[s]" must be given for denying amendment; so either would suffice, but here there were both. *See id.* (emphasis added). The "declared reasons" were previously enumerated. The "apparent reasons"—particularly futility—can be gleaned from the *Apollo III* analysis. Therefore, plaintiff has not met the "very exacting standard" of showing clear error due to the fact that *Apollo III* did not expressly discuss the *Foman* factors.

Plaintiff's argument that it was clear error not to "discuss," "address," or "follow" *Eminence Capital* in *Apollo III* is equally unper-

---

**23.** In *Foman,* the Supreme Court enumerated factors which may justify dismissal without granting leave to amend: undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, undue prejudice and futility. *Foman,* 371 U.S. at 182, 83 S.Ct. 227.

**24.** *See Apollo I,* 633 F.Supp.2d at 831–832.

suasive.[25] *See* Mot. (Doc. 146) at 14:22; Reply (Doc. 150) at 13:26. The apparent basis for this argument is the Court's realization in *Eminence Capital* that because of the difficulty in establishing a "bright-line" rule for pleading securities fraud, "[a]dherence to th[e] principle[ ]" of "extreme liberality" in grant of leave to amend "is especially important in the context of the PSLRA." *Eminence Capital*, 316 F.3d at 1052; and 1051 (citations and internal quotation marks omitted). Consistent with that view, the Ninth Circuit held that a district court's denial of leave to amend in a securities fraud action was an abuse of discretion.

There was no clear error in *Apollo III* by not "*follow[ing ]*" *Eminence Capital*, however. *See* Reply (Doc. 150) at 13:26 (emphasis added). That is because, *inter alia*, there is one critical factual distinction between that case and the record before this court in *Apollo III*. There, in "defend[ing] the dismissal with prejudice[,]" plaintiffs advised the district court "that the special committee will release a report that will provide all the requisite details [required to plead a case under PSLRA]." *Eminence Capital*, 316 F.3d at 1053 (internal quotation marks omitted). When considering whether to grant plaintiff's one line "request" for leave to amend in *Apollo III*, plaintiff did not make a similar "proffer that additional evidence was forthcoming which would enable them to add necessary details to their [SAC]." *See id.* Plaintiff did nothing. Thus, it has not shown that it was clear error for this court not to "follow" *Eminence Capital*. Likewise, given that important factual distinction, the court fails to see how it could be clear error to neither "discuss" nor "address" *Eminence Capital*. It is difficult to conceive of a situation, like the present one, where a plaintiff can avail itself of the relatively liberal amendment standards set forth in *Eminence Capital*, while simultaneously making no effort to show why it should be allowed to amend its complaint, and circumventing the Local Rules by not submitting a proposed amended complaint.

Plaintiff also is unable to establish clear error for another reason—its failure to come forward, when requesting leave to amend, with any additional facts to satisfy the PSLRA's pleading requirements. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir.2002) when seeking leave to amend for a second time. In *DSAM Global*, the district court dismissed the FAC with leave to amend because plaintiff failed to properly plead scienter under the PSLRA. After plaintiffs filed their SAC, finding that amendment would be futile, the district court dismissed it "for the same reason but this time without leave to further amend." *Id.* at 388. Affirming that dismissal without leave to amend, the Ninth Circuit reasoned that plaintiff had "conducted extensive factual investigation, ha[d] all of the necessary documents, and ... failed to come forward with additional facts that would meet the scienter pleading requirements." *Id.* at 391; *see also Silicon Graphics*, 183 F.3d at 991 ("appropriate" to dismiss with prejudice a derivative action where plaintiff "failed to set forth any facts which he could add to save his complaint[ ]").

Here, based upon the content of the SAC and its accompanying exhibits, it is reasonable to infer that plaintiff conducted at least a fairly extensive factual investigation. Likewise, much like *DSAM Global*, there is nothing to suggest that plaintiff does not have all of the necessary documents, at least with respect to publicly filed documents. The SAC relies extensively upon such documents and, with two exceptions, all of the 40 exhibits filed with the SAC are public documents. *See* SAC Index of Exhibits (Doc. 122–1) at 1–3. Most important, however, is that as in *DSAM Global*, plaintiff did not include additional facts of any kind to support its cursory request for leave to amend. That omission was particularly glaring in the absence of a proposed amended complaint. As this court reasoned in *Apollo III*, when noting the absence of a proposed draft complaint, perhaps plaintiff "does not have any additional facts[;] [o]therwise, *surely* plaintiff would have brought them to the attention of the court

---

**25.** In *Apollo I*, this court did discuss *Eminence Capital* in some depth. *See Apollo I*, 633

F.Supp.2d at 831–832.

and defendants." *Apollo III*, 2011 WL 1253250, at *37 n. 28 (emphasis added). In that respect this case is not unlike *Vantive*, where the Ninth Circuit found it was "not unreasonable for the district court to conclude that it would be pointless to give the plaintiffs … another chance to amend[ ]" where, for one thing, they "declined to say what additional facts they might plead if given the chance to amend." *Vantive*, 283 F.3d at 1097–1098.

For all of the reasons discussed above, plaintiff, as the party seeking to reopen the judgment, has not met the "very exacting standard" of showing clear error with respect to this court's denial of its request to amend in *Apollo III*. *See Campion*, 2011 WL 1935967, at *1 (citation and internal quotation marks omitted).

Plaintiff is trying to rectify this serious omission, by claiming, as earlier stated, "[t]hat amendment would not be futile because [it] can … address the deficiencies identified in [*Apollo III*][.]" *See* Mot. (Doc. 146) at 14:25–26 (emphasis omitted). Plaintiff would do that "by submitting an amended complaint which" would supposedly:

> (i) correct[ ] any 'discrepancies and inconsistencies' between the [SAC's] allegation and the accounting errors admitted as part of Apollo's restatement on which plaintiffs rely; (ii) provide[ ] a more detailed explanation of how Apollo's restatement supports their allegations of falsity and fraud; (iii) further describe[ ] how defendants' false accounting for options backdating led to the errors in Apollo's financial statements; (iv) explain[ ] in more detail how such practices clearly violated the applicable accounting rules; (v) include[ ] additional financial analysis of the stock option grants issued by Apollo consistent with those pled and approved by the Ninth Circuit in *Finisar III*; and (vi) plead[ ] additional facts sufficient to respond to the Court' findings with respect to other false statements alleged in the complaint.

*Id.* at 16:11–20. Based upon this list, plaintiff contends that "because it is not clear … that the [SAC] would not be saved by any amendment, the Court should modify its

judgment to provide plaintiff[ ] with an opportunity to" do so. *Id.* at 16:21–24 (citation and internal quotation marks omitted). As the court construes the foregoing, plaintiff is contending that it was clear error to dismiss the SAC without leave to amend because amendment would not be futile.

The flaw in this reasoning is that when this court denied plaintiff's wholly unsupported request to amend, it had just engaged in a comprehensive and detailed analysis of the SAC which, with attached exhibits, was approximately 500 pages. *See Apollo III*, 2011 WL 1253250, at *18, n. 15. In so doing, a number of ways in which both the SAC's backdating allegations and its false and misleading statements were not plead with the requisite degree of particularity were identified and discussed. As to the backdating allegations, "a critical part of the alleged fraudulent scheme[,]" there was "a culmination of pleading deficiencies … compel[ling] the conclusion that the SAC's backdating allegations [we]re not plead with the requisite particularity." *Id.* at *17. That was "evidenced by internal inconsistencies, ambiguities, and erroneous and misleading factual allegations which do not comport with Apollo's own stock chart[,]" discussed in depth in *Apollo III*. *Id.*[26]

Further, "the SAC include[d] precisely th[e] same five grant allegations" as the FAC, "and add[ed] a sixth grant date—October 20, 2003." *Id.* at *1. Additionally, there were a "a number of [other] similarities between the FAC and the SAC." *Id.* at *2, n. 4. As to the October 20, 2003, grants, however, "[t]he ambiguous, inconsistent and sometimes erroneous allegations of th[os]e … grants[,]" as discussed in *Apollo III*, "magnified the court's concern, *inter alia*, regarding the factual accuracy of allegations as to th[ ]e [original] five grant dates." *Id.* at *12. In *Apollo I* the court "accepted at face value the accuracy of the FAC's allegations pertaining to the five grant dates therein[.]" *Id.* The court could not do that in *Apollo III* because "the factual inaccuracies in the October 20, 2003 grant allegations mandate[d] closer examination of the other five grant date allega-

---

**26.** *See also Apollo III*, 2011 WL 1253250, at *2– *17.

tions." *Id.* The court proceeded to engage in an undeniably tedious analysis revealing the shortcomings as to the original five grant dates. *See id.* at *13–*17. In that respect, "plaintiff offer[ed] very little substantively to refute any of defendants' arguments[.]" *Id.* at *12.

The SAC included 54 allegedly false and misleading statements, which the court divided into two categories for analytical purposes. The starting point for analyzing the accounting statements were "those . . . which undermine[d] rather than advance[d] plaintiff's fraud theory[.]" *Id.* at *20. Among other things, for the sake of argument, the court assumed that "Apollo's Restatement [wa]s an admission that certain accounting statements were false when made[.]" *Id.* at *23. That assumption could not "cure the SAC's failure to plead falsity with particularity[,]" because:

> The lack of particularity primarily arises from the manner in which the SAC relies upon the Restatement. It is not enough to simply allege that a given statement is false and misleading and then baldly rely upon a restatement. Rule 9(b) and the PSLRA demand more. That is especially so here where the Restatement does not always support the SAC's allegations and, on its face, the correlation between the Restatement and the false statements is fairly attenuated.

*Id.* Further, "[a]lthough the form ha[d] changed, plaintiff did not cure what this court previously found to be '[p]erhaps the most troubling aspect of the [FAC]'—'the "vague allegations of deception"' . . . 'unaccompanied by a particularized explanation stating why the defendant[s'] alleged statements or omissions [we]re deceitful.'" *Id.* at *24 (quoting *Apollo I,* 633 F.Supp.2d at 786) (other citation and internal quotation marks omitted). Indeed, "[t]he SAC's changes in form only highlight[ed] the substantive deficiencies of the SAC, . . . revealing that it d[id] not plead falsity with the requisite degree of particularity." *Id.* at *18. From the foregoing, it is apparent why, when confronted with the plaintiff's completely unsupported request for leave to amend, this court "quite reasonably believed that [another]

amended complaint would suffer the same fatal flaws as the [SAC][,]" and perhaps the FAC, given the similarities between the two. *See James Cape,* 453 F.3d at 401. Consequently, given the perfunctory nature of plaintiff's request to amend in *Apollo III,* and the entire record as constituted at that time, this court could not anticipate how the SAC could be saved by further amendment. Therefore, the court gives no credence to the notion that amendment was not futile. Hence, it was not clear error to dismiss the SAC without leave to amend.

As earlier noted, plaintiff's reply claims that its 74 page DTAC, which includes allegations based upon "the services of a leading independent statistical expert on backdating," which plaintiff "retained[,]" DTAC (105–1) at 17:13, ¶ 48, now *"demonstrates that leave to amend is not futile* [.]" Reply (Doc. 150) at 13:1–2 (bold emphasis omitted) (italicized emphasis added). Plaintiff describes that DTAC as "essentially an offer of proof demonstrating that amendment would not clearly be futile[.]" *Id.* at 15:1.

Quite simply, it is too late in the day for this argument. This is the type of argument and "offer of proof," even if not in the form of a DTAC, which plaintiff should have brought to the court's (and the defendants') attention when requesting leave to amend in opposition to defendants' motion to dismiss the SAC. Plaintiff's failure to do so runs afoul of the Ninth Circuit's well-settled rule that "[a] motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *See Marlyn Nutraceuticals,* 571 F.3d at 877 (case citation and internal quotation marks omitted) (emphasis in original).

Before concluding, it is necessary to briefly consider plaintiff's assertion that "standing alone, the Court's warning that claims could be dismissed was not a sufficient basis to warrant denial of leave to amend[.]" Mot. (Doc. 146) at 16:25–26 (emphasis omitted). The record contradicts this assertion. The court enunciated four specific reasons for denying the request for leave to amend, set forth herein. The court's prior "warning" was not a basis for that determination. Even

if plaintiff so construes *Apollo III,* as is evident, that was not the only reason given. There is, thus, no merit to this assertion.

In sum, with respect to the amendment issue, plaintiff has not met the "very exacting standard" necessary to show clear error so as to justify reopening a final judgment pursuant to Fed.R.Civ.P. 59(e). *See Campion,* 2011 WL 1935967, at *1 (citation and internal quotation marks omitted). It has not shown, based upon the entire record before the court when it denied plaintiff's request for leave to amend, that the alleged clear error was "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law[.]" *See In re Wahlin,* 2011 WL 1063196, at *2 (citations and internal quotations omitted). Given the unique situation facing this court in *Apollo III,* certainly it was not "dead wrong" to deny amendment. *See Campion,* 2011 WL 1935967, at *1 (quoting *Hopwood,* 236 F.3d at 273 (citation omitted)).

### Conclusion

In moving to reopen and modify the final judgment in this case pursuant to Fed. R.Civ.P. 59(e), plaintiff endeavored to show that: (1) *Finisar III* and *Ernst* each constituted a change in controlling law; (2) dismissal of its claims based on defendants' allegedly false and misleading statement as to APB 25, IRS Code § 162(m) and the SOx certifications was manifestly erroneous; and (3) denial of its request for leave to amend was clearly erroneous. Plaintiff was unsuccessful. Because plaintiff has not shown that it is entitled to the extraordinary remedy of relief under Rule 59(e), for all of the reasons set forth herein, the court hereby **DENIES** "Lead Plaintiff's FED.R.CIV.P. 59(e) Motion to Alter or Amend Judgment" (Doc. 146).